**TEEVAL CO., Inc., v. DEWEY, Governor, et al.**

United States District Court
S. D. New York.
April 10, 1950.

Shanley, McKegney & Fougner, New York City, for plaintiff; Robert S. Fougner, New York City, of counsel.

Nathaniel L. Goldstein, Atty. Gen., of New York on his own behalf and on behalf of defendants Thomas E. Dewey, Governor, and Joseph D. McGoldrick, State Rent Administrator; Abe Wagman, New York City, of counsel.

Frank S. Hogan, Dist. Atty., New York City, on behalf of defendant Hogan, Whitman Knapp and Edwin C. Hoyt, Jr., Asst. Dist. Attys., New York City, of counsel.

Before AUGUSTUS N. HAND, Circuit Judge, and KNOX, Chief Judge, and NOONAN, District Judge.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff is the owner of premises at 1125 Park Avenue, an apartment house in New York City. From November 1, 1943, to June 30, 1947, the rents for those premises were controlled under the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq. That Act was followed by the Federal Housing Rent Act of 1947 as amended in 1948 and 1949, 50 U.S.C.A.Appendix, § 1881 et seq. The 1949 Amendment to the Federal Housing Rent Act in substance provided that the Expediter make prompt adjustments to cure hardships and inequities, Section 201(b), and that in curing hardships and inequities the Expediter observe the principle of maintaining maximum rents at levels which will yield "a fair net operating income." Section 204(b) (1). The Local Option provisions of the Act provided: (1) that State Control was to supplant Federal Rent Control upon advice by the Governor that the State had adequately provided for State Control, Section 204(j) (1); (2) that there should be decontrol of all or part of a State upon determination that the Housing Shortage had ended, Section 204(j) (2); (3) that there should be municipal decontrol after determination that housing shortage had ended in the municipality, Section 204 (j) (3).

The Act further provided against any reimposition of Federal control after Federal decontrol became effective pursuant to Section 204(j).

On September 27 and September 30, 1949, the Housing Expediter, after determining that the premises had an annual income of $214,000 and an annual expense of $185,000, adjusted the annual rents by $31,000 to provide a fair net operating income. Based upon these determinations and an assessed value of $1,450,000, the yield from the property was less than 2% prior to such adjustment.

On October 7, 1949, the City of New York enacted Local Law 73 for the year 1949 which froze the rents of the premises as of March 1, 1949—the annual rent in effect prior to the adjustment—and forbade collection of the increase granted under Federal law.

On December 29, 1949 the New York Court of Appeals held the Local Law unconstitutional on State grounds. F. T. B. Corp. v. Goodman, 300 N.Y. 140, 89 N.E. 2d 865. On January 1, 1950, the accrued instalments of increase and the January 1950 instalments (which until the decision of the New York Court of Appeals above mentioned were barred by the Local Law) totalled $13,059.11, of which instalments to the amount of $4,553.13 were collected by January 10, 1950.

On January 10, 1950, the State of New York enacted a statute [1] validating the Local Law in order to cure the State constitutional defects as of October 7, 1949, and plaintiff thereupon returned the sum of $4,553.13 in compliance with that law. The New York Court of Appeals has now pending before it an action brought to determine issues arising under the Validating Act which we understand will be reached for argument on May 15, 1950.

On March 29, 1950, the State of New York enacted Chapter 250 of the Laws of

1. Chapter I of the Laws of 1950.

1950, McK.Unconsol.Laws, § 8581 et seq., the Emergency Housing Rent Control Law hereafter called the State Rent Law, the material provisions of which are as follows:

(1) A requirement that the Governor advise the Housing Expediter that the State has adequately provided for Rent Control pursuant to Section 204(j) (1) of the Federal Act and that the State will take over Rent Control on May 1, 1950. Sec. 11, subd. 1.

(2) A provision, effective upon enactment, for the appointment of a State Commissioner. Sec. 3.

(3) A provision prohibiting the commencement of any action or reduction to judgment in any pending action of the difference between the federally established rent and the rent prescribed by Local Law 73. Sec. 13-a, subd. 2.

(4) The establishment of maximum rents for premises subject on March 1, 1950, to both Federal and Local Law (New York City only) at the amounts prescribed by the Local Law, thus freezing New York City rents as of March 1, 1949. Sec. 4, subd. 1(a).

(5) The establishment of maximum rents on March 1, 1950, for housing outside of New York City at the rents prescribed on March 1, 1950, by the Federal law. Sec. 4, subd. 1(a).

(6) Not later than July 1, 1950, there shall be an adjustment of rentals for increased services and facilities. Sec. 4, subd. 2(a).

(7) Upon completion of a study of all factors affecting residential rents and not later than December 1, 1950, there shall be an adjustment where (a) out-of-pocket expenses before depreciation exceed rental income; (b) hardship results from difference in rents allowed for similar housing in the same community; (c) gross inequities. Sec. 4, subd. 2(b).

(8) The formulation of a plan for rent controls at levels which are "generally fair and equitable" for submission to the Legislature by January 15, 1951, to become effective March 1, 1951, unless prohibited by a joint resolution of the Legislature. Sec. 4, subd. 2(c).

On March 30, 1950, the plaintiff instituted this action to declare the State Rent Law unconstitutional and to enjoin the substitution of the State Rent Law for the Housing and Rent Act on the ground that the State Rent Law was unconstitutional. The Governor, the Attorney General, and the District Attorney of New York County, were joined as parties-defendants. On March 31, 1950, the defendant Thomas E. Dewey appointed Joseph D. McGoldrick State Rent Administrator pursuant to Section 3, and thereupon notified the Housing Expediter that the State of New York would substitute State for Federal rent control. On April 3, 1950, Judge Knox granted an ex parte application of the plaintiff to join Joseph D. McGoldrick as a party-defendant and the latter was made a party accordingly.

The plaintiff contends on the merits that the Act before us is not within the State police power and that it violates the Fourteenth Amendment because it allows a return of only 2% of the net value of rented premises. It is also argued that it is confiscatory because it takes away rent increases which the Expediter awarded to landlords in New York City during a period in which he possessed authority to fix rents and during which the Local Law forbidding increases had no effect because it was unconstitutional, as the New York Court of Appeals held.

There plainly is no justification for exercising our jurisdiction in the present case. The New York courts have shown no hesitation in dealing with matters of rent control, and a resort to those courts in order to interpret the Act before us may avoid consideration of questions arising under the Constitution of the United States and possible conflicts in the views of the two courts. If their decisions should prove to be wrong on Federal grounds a review may be had in the Supreme Court of the United States. Moreover, the statutory provisions validating the local rent law which are incorporated in the very Act before us are already the subject of consideration by the New York Court of Appeals. The State courts are the proper tribunals to construe the State rent statutes and to determine

the scope of the public emergency with respect to which the New York Legislature acted. It is therefore evident that we should not consider the validity of the State Act before us. This view is supported by our own recent decision in East Coast Lumber Terminal, Inc., v. Town of Babylon, 2 Cir., 174 F.2d 106, 8 A.L.R.2d 1219, which discussed the pertinent decisions of the Supreme Court. This view applies not only to the relief asked in the way of a preliminary and final injunction, but also to the relief by way of a declaratory judgment. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S. Ct. 1070, 87 L.Ed. 1407; see Colegrove v. Green, 328 U.S. 549, 552, 66 S.Ct. 1198, 90 L.Ed. 1432. Under the circumstances we think that it is unnecessary to retain the action, which should be dismissed. See Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741.

Complaint dismissed, but without costs to any of the parties.