Sarah JETER, on behalf of herself and all other tenants similarly situated, Plaintiff,

v.

Andrew D. KERR, Individually and as Administrator of the New York City Housing and Development Administration, et al., Defendants.

No. 73 Civ. 5279.

United States District Court, S. D. New York.

March 31, 1977.

Gerald Mann, The Legal Aid Society, New York City, for plaintiff.

Harry Michelson, New York City, for defendants.

## MEMORANDUM

LASKER, District Judge.

The defendants move that this court abstain from entertaining jurisdiction and for a stay of proceedings as to plaintiff's requests for documents and interrogatories in this case challenging the City's practice of issuing Maximum Base Rent (MBR) increases to landlords without affording tenants prior notice or hearing.

Defendants suggest three bases for abstention. First, they argue that "recent decisions of the U.S. Supreme Court display a clear pattern of preference for local judicial regulation of essentially local matters, of which the New York City Rent Control Law is typical." Second, they contend that on the merits plaintiff's complaints as to the operation of the MBR System do not rise to the level of federal constitutional violations, since the "worst consequence" of the procedure complained of is a yearly 7½% increase in the legal maximum rent. Finally, they claim that *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed. 597 (1976) should be read to reject plaintiff's theory that they are entitled to special procedural protection as representatives of a class of the poor upon whom even small rent increases may have special impact.

■ Defendants' second and third contentions merit little discussion on this motion. *Washington v. Davis* is completely inapposite. That case held that use of a facially neutral employment test which had a discriminatory impact on minority applicants did not violate constitutional standards unless in addition a showing of discriminatory intent was made. It did not involve or consider the procedural due process issue herein raised. In their moving

affidavit,[1] defendants do not discuss the merits of their second contention, but discuss only those cases relating to the abstention doctrine. To the extent that defendants intend to suggest that any injury to plaintiffs is *de minimis* or is not a "grievous loss" of a statutory entitlement, the argument must be rejected on the authority of such cases as *Burr v. New Rochelle Municipal Housing Authority*, 479 F.2d 1165 (2d Cir. 1973); *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970). We cannot agree that for the occupants of rent-controlled housing, 60% of whom are claimed to have incomes below $8,000. (¶ 28, Rule 9(g) Statement Accompanying Plaintiffs' Motion for Summary Judgment), a yearly rent increase of 7 and ½% is constitutionally insignificant. Believing this court to have jurisdiction over the issues raised in the complaint, we turn to defendants' remaining contention, that as a matter of discretion this court should abstain from deciding these issues and "remand" [sic] the parties to the state courts or dismiss the complaint.

Defendants have taken us on a veritable excursion through various aspects of what is loosely referred to as the federal abstention doctrine. They seem to suggest that each and every aspect of this doctrine has a bearing on this case and requires us to abstain. The defendants' argument fails to specify those aspects of this case which correspond to characteristics of other decisions which concluded that abstention was appropriate. Nonetheless, we consider each of the claimed bases for abstention.

In such cases as *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Dillard v. Virginia Industrial Comm'n.*, 416 U.S. 783, 94 S.Ct. 2028, 40 L.Ed.2d 540 (1974); *Boehning v. Indiana Employees Ass'n.*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); *Harris Co.*

*Commissioner's Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) and *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), (discussed in ¶¶ 8, 9 of Defendants' Affidavit), abstention was found to be required because of the possibility that resolution of a question of state law might avoid in whole or in part "the necessity for federal constitutional adjudication." *Bellotti v. Baird, supra*, 428 U.S. at 147, 96 S.Ct. at 2866. The City, however, has suggested no question of state law whose resolution could affect the plain and simple due process claim asserted by plaintiffs: that it is a denial of due process not to afford tenants notice of and opportunity to protest MBR increases before they take effect.[2] Nor have the defendants referred us to any cases now pending in the state courts in which this issue might be resolved. Cf. *Carey v. Sugar, supra; Tonwal Realties, Inc. v. Beame*, 406 F.supp. 363 (S.D.N.Y. 1976).

■■ It appears that state law on this question is perfectly clear and that no case for abstention under the above cited cases is presented. This conclusion is based on the recent decision of the New York Court of Appeals in *Bedford Building Co. Inc. v. Beame*, 38 N.Y.2d 729, 381 N.Y.S.2d 38, 343 N.E.2d 756 (1975) in which tenants intervened in a suit brought by the landlord's association to require the City to issue MBR increases in accordance with local law. The Appellate Division in that case had directed the City either to issue final MBR increases to all eligible buildings or, if the processing could not be completed within the thirty days allowed, to issue interim MBR orders to the landlords. 45 A.D.2d 950, 359 N.Y. S.2d 299 (1st Dept. 1974). The intervenors filed an appeal from that decision insofar as it found the MBR law to be constitutional

---

**1.** Defendants' legal argument is contained in their moving affidavit, which we treat as the separate memorandum of law normally required under Local Rule 9(b).

**2.** The defendants virtually conceded in their Memorandum in Support of Motion for Summary Judgment Dismissing the Complaint, at 3 (filed May 15, 1974) that the City law does not in fact provide for a hearing for the tenant to voice his or her objection to the proposed rate increase prior to the City's decision. Cf. *Carey v. Sugar, supra.*

and insofar as it directed the grant of interim MBR orders, and argued that it was a denial of due process to allow such increases—whether they be interim or final MBR orders—to go into effect without affording tenants notice and an opportunity to be heard prior to the rent adjustment. See Brief and Supplementary Appendix of Intervenors-Appellants filed in New York Court of Appeals. The Court of Appeals in a four sentence *per curiam* opinion affirming the Appellate Division stated: "We would only add that we find no merit to intervenors' claim that the tenants are constitutionally entitled to notice and an opportunity to be heard before rents are adjusted (cf. *Wasservogel v. Meyerowitz*, 300 N.Y. 125, 89 N.E.2d 712)." [3] Accordingly, we reject as a basis for abstention the suggestion that state law is unclear and should be further resolved by state courts before federal courts approach constitutional issues.

Defendants also seem to argue that cases such as *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) and *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d

---

**3.** Both the city defendants and the plaintiff have suggested that *Bedford Building Co. v. Beame, supra*, insofar as it dealt with tenants' due process claims, did so only with respect to tenants' right to prior notice and hearing before issuance of *interim* MBR orders, and did not dispose of the due process claim with respect to final MBR orders. Although the initial motions to intervene filed in the trial court focused more on the intervenors' objections to the interim relief sought than on constitutional objections to the MBR law itself, it is clear that the intervenors presented to the Court of Appeals—and the Court of Appeals decided—the question whether Local Law No. 30 of 1970 (the MBR law) was unconstitutional insofar as it authorized the grant of MBR increases without prior notice and opportunity for the tenant to be heard.

The notice of appeal which intervenors filed on October 15, 1974 specified that "this appeal is taken from such part of the order of the Appellate Division as, by requiring the respondent-respondent to comply with Local Law No. 30 of 1970, *finds said law to be constitutional, and further*, this appeal is taken from such part of the Appellate Division order as directs the issuance of interim MBR orders." (Emphasis added) Their brief in the Court of Appeals described the "questions presented" as follows:

"(1) Is the right to a controlled rent apartment an entity entitled to the protection of due process of law?

(2) A right to a controlled rent apartment is entitled to due process of law. Does Local Law No. 30 of 1970 satisfy the requirements of due process of law?"

At Page 5 of the brief, intervenors state their argument to be

"that Local Law No. 30 of 1970, permitting rent increases without providing notice or an opportunity to be heard before rent increases are authorized and collected; and limiting and substantially denying a post-taking hearing on the question of landlord eligibility for rent increases is a deprivation of tenants' 'property' rights without due process of law."

Thus, the unambiguous declaration of state law by the Court of Appeals in 1975 quoted in the text above means exactly what it says: that tenants have no right to a hearing or notice before rents are "adjusted", whether by way of interim or final MBR orders.

In response to an argument by the former defendant, a landlord association, who is no longer a party to this action but who continues to address communications to the court, both remaining parties suggest that *Bedford* did not decide this issue, as surprising as it is that the plaintiff makes such an argument. The landlord former defendant suggests that the issue raised here by the tenants was decided adversely to them by the Court of Appeals and that these plaintiffs are bound by that judgment because of the intervenors' failure to seek *certiorari*. Although in their moving papers the state court intervenors declared that they sought intervention on behalf of all tenants in rent-controlled buildings, it does not appear that serious consideration was directed at the state court level to the class allegations. No question of notice, for example, was discussed. The state court, indeed, seemed to treat the motions to intervene as those of the individual proposed intervenors. It wrote (in full on this subject) that

"In conjunction with the foregoing application there are two motions to intervene and one motion to appear as Amicus Curiae. The motions to intervene by Isidore Unterberg, Frances Ebary, Findlay A. Taylor, and Ernest Sares, and by the Metropolitan Housing Council, Katherine Stern, Lena Michaelson and Esther Rand are granted."

Under these circumstances, this court is not bound to apply the state court's decision on issues involving federal, constitutional questions to the instant plaintiffs who were represented (if at all) in the state court proceeding by intervenors without any judicial consideration of, e. g., the adequacy of the representation, or the advisability of notice to the class. Cf. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

482 (1975) require abstention here. (¶ 10, Moving Affidavit). These cases, however, involved efforts by persons who were defendants in ongoing criminal or quasi-criminal state proceedings to obtain federal injunctive relief. They have virtually no bearing to the instant case. Nor does the recently decided case of *Juidice v. Vail*, —— U.S. ——, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), which similarly involved suit by federal plaintiffs to decide issues which could be presented in pending state court contempt proceedings against the federal plaintiffs.

■ As the defendants seem to recognize, the only substantial basis for abstention in the instant case arises from a line of decisions which can be said to date from *Burford Co. v. The Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (¶¶ 11, 12 Defendants' Moving Affidavit). The defendants characterize this line of decision as "expand[ing] the abstention doctrine to include its use in cases wherein a federal issue under the civil rights law goes to the heart of important state governmental issues." *Burford* itself involved a challenge to an order of the State Railroad Commission of Texas permitting the drilling of certain oil wells separated by distances less than the minimum generally prescribed. The court, emphasizing Texas'

substantial interest in the substantive aspects of this comprehensive scheme of regulation, and noting that plaintiffs had a remedy by way of appeal from the Commission Order to the state courts, held that in the exercise of its equitable jurisdiction the federal court should have dismissed the suit. Other cases which defendants group with *Burford* also involve challenges to substantive aspects of state regulatory or law enforcement activity. See, e. g., *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed. 561 (1976); *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).[4]

The defendants argue that the City's rent control law is similar to the regulatory schemes and/or sovereign law enforcement activities involved in the above cited cases, in that it is a matter in which local interests are so predominant that federal courts simply should not engage in review of its administration. In support of their contention, they point to *Tonwal Realties, Inc. v. Beame, supra*, 406 F.Supp. 363. There, landlords sought a judgment declaring the rent control statute to be unconstitutional in various respects. The court quite properly abstained from decision, noting that (a) a case was presently pending in the appellate state court presenting identical issues, and (b) the state courts had been far from reluc-

---

4. Defendants also rely on *Mildner v. Gulotta*, 405 F.Supp. 182 (E.D.N.Y.1975), *aff'd without op.*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). There suit was brought by attorneys, who had been the subject of disciplinary action by the Appellate Division of the New York Supreme Court. Without exhausting their available state court appeals, plaintiffs brought suit in federal court challenging the procedures by which the state courts took disciplinary action. Judge Neaher, writing for the court, found the case appropriate for abstention, on the ground that federal plaintiffs who were defendants in state court proceedings where they could raise available constitutional defenses should not come first to the federal court without affording the state court an opportunity to decide the constitutional question. Judge Moore concurred in dismissing the complaints, but on the merits. Judge Weinstein dissented. To the extent that the court held abstention was appropriate, we believe the *Mildner* case is distinguishable in several respects. First, the proceedings involved there were quasi-criminal in character and are administered by the state

courts, which have a significant interest in controlling the membership of the bar which practices before them. See *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). In the instant case, although the rent control laws are matters of substantial local significance, the state interest is not as substantial as the "interest of the state court in adjudicating the continuing professional fitness and character of its own officers." *Anonymous v. Association of the Bar*, 515 F.2d 427, 432 (2d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). In effect, the federal court in *Mildner* was asked to review state court actions before the state courts had been afforded an opportunity to correct any constitutional defects. In the instant case, it is the actions of a local administrative agency which are challenged, and the state courts have already expressed themselves on the constitutional issue in question. Moreover, the plaintiffs here are not defendants in a pending state matter who have failed to exhaust state remedies.

tant to render decisions in rent control cases. It wrote:

"'If we were to distort §§ 1343 and 1983 to vest federal courts with jurisdiction over the uniquely local substantive matters which this case presents, we would not only impair our ability to consider the vast array of cases that properly belong in federal forums but, as surely as sunrise, we create yet another and an unnecessary interference with orderly State processes.' *McDowell v. Texas*, 465 F.2d 1342, 1346 (5th Cir. 1972) . . ." 406 F.Supp. at 366 (emphasis added)

In contrast to *Tonwal*, plaintiffs here do not challenge substantive aspects of the Rent Control Law, such as the criteria which the law directs the City agency to consider in reaching its determinations respecting MBR orders. Rather, plaintiffs contend that by virtue of that law they, as tenants, hold a statutory entitlement to pay no more than the lawful maximum rent, and that the federal constitution requires appropriate procedural protections to be afforded before that statutory entitlement is adversely affected to any substantial degree. The *Burford* line of cases, we believe, was not meant to require a federal court to abstain from deciding a pure issue of procedural due process raised under state or local statute. Indeed, the federal courts have decided many such claims in recent years. See, e. g., *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Yee-litt v. Richardson*, 353 F.Supp. 996 (N.D.Cal.), aff'd. 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973).

Although it is always necessary in a case raising this kind of issue to balance the governmental interests involved against those of the individual claimants, the federal court is no less qualified to strike that balance than are the state courts. Moreover, it is our judgment that the state courts have finally expressed themselves with respect to the constitutional issue raised and that it would be futile to stay this proceeding pending additional state court determinations. See *Bedford Building Co. Inc. v. Beame, supra*.

The defendants have suggested that the scope of discovery which would be required if this action remains in federal court is such that the orderly processes of City government would be interrupted. The abstention doctrine is not intended to relieve defendants of the obligations of civil discovery. Whether the case is pursued in federal or state court necessary discovery must be had. Although it is tempting to consider abstention in a case where resolution of the factual issues presented may involve a detailed and perhaps tedious inquiry into the effectiveness of existing state remedies, it is important always to remember that "a federal court's power to abstain from exercise of its jurisdiction is limited to narrow and exceptional circumstances," *Ungar v. Mandell*, 471 F.2d 1163, 1166 (2d Cir. 1972), "none of which are found here." *Id.*

Accordingly, the defendants' motion to abstain is denied.

It is so ordered.